UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTHUR B. CHERRY, # 364212,

                Petitioner,

v.                                             Case Number: 08-cv-12465-BC
                                             Honorable Thomas L. Ludington

NICK J. LUDWICK,

                Respondent.

_____/

**OPINION AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Michigan prisoner Arthur B. Cherry ("Petitioner") currently confined at the Lakeland

Correctional Facility in Coldwater, Michigan,[1] through counsel, filed this habeas petition pursuant

to 28 U.S.C. § 2254 challenging his convictions for first-degree felony murder,[2] assault with intent

to rob while armed, and felony firearm following a jury trial in the Wayne County Circuit Court on

October 21, 2002. On November 15, 2002, Petitioner was sentenced to concurrent terms of life in

prison for the murder conviction and twenty-three years, nine months to fifty years in prison for the

---

[1]Petitioner was incarcerated at the St. Louis Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Lakeland Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the case caption would be amended. However, there is no reason to do so here because the petition will be denied.

[2]The predicate felony for the felony murder charge was first-degree home invasion. That conviction was vacated by the trial court following a post-conviction proceeding.

assault conviction, to be served consecutively to the mandatory two-year prison term for the felony-firearm conviction. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the effectiveness of trial counsel, the trial court's failure to properly instruct the jury on the underlying felony charge, and prosecutorial misconduct. For the reasons stated below, the Court will deny the petition. The Court also will decline to issue Petitioner a certificate of appealability.

## I.

Petitioner's case arises from a shooting incident that occurred on January 19, 2001, in Detroit, Michigan, resulting in the death of O.D. White ("O.D."). Petitioner, Anthony Adams, and Rotodan Hampton were charged with White's murder. Adams was tried jointly with Petitioner in a bench trial. Hampton became the prosecution's key witness, after a plea and sentence agreement, to testify against Petitioner and Adams. Adams was acquitted. There were no other eyewitnesses to the incident.

Savoy White ("White"), the victim's son and a former Detroit police officer, had an apartment in the basement of his father's home. On the day in question, between the hours of 7:00 and 8:00 p.m., he was awakened by some noises. He initially thought the sounds were coming from the television. He was unsure if he heard voices, but did hear what sounded like footsteps. He said his father was often drunk, dropping things or falling.

White further testified that he heard male voices telling a female to "shut up" and ask "where is the safe?" Trial Tr. vol. I, 95-96 Oct. 15, 2002. He then got dressed and got his gun. He admitted he did not know if the words were directed at the female or his father. He walked to the outside of the house and looked through the windows but saw nothing. He said the front door was open, which was unusual. White testified that he then went across the street to the neighbors and knocked on

their door.  They did not answer.  He flagged a taxi and asked the taxi driver to call the police.

White testified that he heard gunshots before he went outside.  When he returned to the house, the police were there.  He saw his father slumped over in a chair.  White said his father was a "numbers man" who would keep several hundred dollars in his house.

Rotodan Hampton testified next.  She knew Petitioner for ten years and had a child fathered by him.  She testified that she was "in the lifestyle," got drunk one night and had sex with him, which resulted in the birth of their son.  Trial Tr. vol. II, 7 Oct. 16, 2002.  Hampton said the deceased was a friend of hers who paid her to perform oral sex on him.  She would see him everyday because he was the "lottery man."  Trial Tr. vol. II, 11 Oct. 16, 2002.  She knew he had money and a safe.

Hampton further testified that, around Christmas of 2000, she and Adams talked about robbing O.D.  The plan was that Adams would come into his house, tie him up with duct tape, and then take the money.  She said Petitioner was not involved in that discussion.

Hampton further testified that, in a second discussion, Petitioner was present.  She said Adams involved Petitioner because he was the one with a car.  She said Petitioner told her he would bring a gun but would not use it.

Hampton testified that, on the day in question, she called the victim to tell him she was coming over.  That evening, Petitioner drove her to O.D.'s residence.  She went into the apartment and left the security gate unlocked.  She said she sat at the dining room table while O.D. sat in a large chair.  Within ten minutes, Petitioner and Adams came through the door.  Petitioner had a gun. He struck O.D. in the head with the gun causing it to go off.  He then pushed her onto the floor, put the gun on her, and told her to shut up.  When Adams and O.D. got into a struggle, Petitioner struck

O.D. again in the head with the gun.  Petitioner told O.D. to go to the safe.  Hampton said she then ran out of the house.  Before she left, she stole some earrings and a bracelet.

Hampton further testified that she then ran to a nearby restaurant and told the manager about the robbery and asked him to call 911.  She returned to O.D.'s house, but stayed outside.  According to Hampton, she heard two gunshots when she left the house.

When Hampton returned to the house, she spoke to the police and told them her name was Ebony Woodly, because she had an outstanding warrant.  When the police took her to headquarters, she told them she had a date with the deceased and that some men came in with guns and beat him.  She did not identify the men.  When asked why she failed to make an identification, she said, "I can't really answer that question."  Trial Tr. vol. II, 48 Oct. 16, 2002.  She also told the police she was not involved in the robbery.

In Hampton's second statement to the police, she gave them her real name.  She also told them she was involved in a plan to rob the deceased and gave them Petitioner's and Adams's names.  Hampton said she was not offered anything in exchange for her statement.  She said that, about six months after the incident, the prosecutor approached her regarding testifying against Petitioner and Adams.  In exchange for her testimony, she would plead guilty to second-degree murder with an agreement to serve ten to twenty years in prison.

Hampton admitted she lied to the police and said the two men were wearing masks when they came into the house.  She said she was drunk.

Richard Hunter lived next door to Petitioner's mother and was a good friend of Petitioner's.  He said he knew Petitioner for about ten or fifteen years.  Hunter gave two statements to the police.  He said he heard about the robbery on the news.  At trial, he was questioned on his statements.

-4-

Hunter testified that he knew Petitioner as "Nug." Trial Tr. vol. III, 83 Oct. 17, 2002.  He denied that Petitioner and Adams told him they did "a lick." *Id.* at 78-79.  He also denied that they asked him if they could borrow money and that they would repay him when "they get a lick." *Id.* In his statement, he told the police that Petitioner carried a pistol.  He also said he did not know if Petitioner and Adams had robbed anyone.  Rather, Hunter testified that "lick" referred to work.

Testimony from the police officers revealed the following.  When they arrived at the scene, they found the victim slumped down in a chair with blood on the walls and floors.  He appeared to have a gunshot wound to the chest.  There was blood on the safe.  The safe was intact.  They spoke with Ebony Woodly, Hampton's alias.  She told them she was with the victim when two men broke into the house, beat him, and dragged him into the bedroom.  She said one of the men fired two shots at her.  She said she then ran out of  house.

The medical examiner testified that the victim died of a gunshot wound to the right chest.

The jury convicted Petitioner as charged.

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of Appeals, raising the following two claims: his convictions were contrary to the great weight of the evidence and the trial court erred in denying his request for a *Ginther*[3] hearing, alleging that trial counsel was ineffective for failing to raise an alibi defense.  On May 11, 2004, the Court of Appeals affirmed his convictions.  *People v. Cherry*, No. 246792, 2004 WL 1057747 (Mich. Ct. App.  May 11, 2004).  On November 22, 2004, the Michigan Supreme Court denied his application for leave to appeal.  *People v. Cherry*, 471 Mich. 921, 688 N.W.2d 828 (2004) (Table).

On December 16, 2005, Petitioner filed a motion for relief from judgment with the state trial

---

[3]*People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973).

court, raising the same claims raised in this habeas petition.  The trial court denied his motion on

April 12, 2006.  *People v. Cherry*, No. 02-005335 (Wayne County Circuit Court, Apr. 12, 2006).

His delayed application for leave to appeal filed with the Court of Appeals was denied, *People v.*

*Cherry*, No. 277287 (Mich.Ct.App. Oct. 23, 2007), as was his application for leave to appeal filed

with the Michigan Supreme Court.  *People v. Cherry*, 480 Mich.  1186, 747 N.W.2d 269 (2008).

Petitioner filed this habeas petition on June 10, 2008.

II.

Review of this habeas petition is governed by the Antiterrorism and Effective Death Penalty

Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA").  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that

are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at

a result different from [this] precedent.' "  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per

curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable

application' prong of the statute permits a federal habeas court to 'grant the writ if the state court

-6-

identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.' " *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 789 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

A federal habeas court must presume the correctness of state court factual determinations.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing

evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

A.

Respondent initially argues that Petitioner was untimely in filing his habeas petition with this Court because he "missed the date for filing a timely application in the Court of Appeals on the motion for relief from judgment," within the twenty-one day period, which Respondent calculates as being May 4, 2006. Respondent argues that the delayed application was filed 285days after the expiration of the period for a timely appeal, and therefore, the remaining time left on the habeas clock had expired. That analysis is incorrect and has been specifically rejected by the Sixth Circuit.

In *Carey v. Saffold*, 536 U.S. 214, 219-21 (2002), the Court held that the statute of limitations remained tolled during the time period between a lower court's denial of a post-conviction motion and an appeal to the next appellate level. The Supreme Court specifically held that the word "pending" in the AEDPA tolling provision, § 2244(d)(2), indeed "cover[s] the time between a lower state court's decision and the filing of a notice of appeal to a higher state court." *Id.*

The Sixth Circuit applied the *Carey* decision to the Michigan post-conviction procedure in *Matthews v. Abramajtys*, 319 F.3d 780 (6th Cir. 2003). In *Matthews*, the Sixth Circuit rejected the respondent's argument, holding that the gap between the trial court's denial of a motion for relief from judgment under Michigan Court Rule 6.500 *et.seq.*, and the filing of a delayed application for leave to appeal in the Court of Appeals does not count against the one-year statute of limitations period. *Matthews*, 319 F.3d at 788; *see also Spytma v. Howes*, 313 F.3d 363 (6th Cir. 2002). As such, Respondent's argument is meritless. Petitioner's habeas petition is timely and the Court therefore will proceed to address the merits of Petitioner's claims.

-8-

B.

In his first habeas claim, Petitioner alleges that there was insufficient evidence to sustain the verdict and the convictions were against the great weight of the evidence. "A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence." *Dell v. Straub*, 194 F.Supp.2d 629, 648 (E.D. Mich. 2002); *see also Cukaj v. Warren*, 305 F.Supp.2d 789, 796 (E.D. Mich. 2004) (same). Rather, the appropriate claim on habeas review is whether there was sufficient evidence to support Petitioner's convictions.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the Court would. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "First, as in all sufficiency-of-the-evidence challenges, [the Court] must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in the original) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 560 (1979)). "[The Court] does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). Therefore, "even though [the Court] might have not voted to convict a defendant had [it] participated in jury deliberations, [it] must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id.*

-9-

"Second, even [if the Court were] to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in the original); *see also Tucker v. Palmer*, 541 F.3d 652, 666 (6th Cir. 2008) (same).

The prosecution need not rule out every hypothesis except that of guilt, and a reviewing court must defer to the fact finder's resolution of conflicting inferences. *Brown*, 567 F.3d at 206. "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in the original).

In Michigan, "[t]he elements of first-degree felony murder are that the defendant killed the victim and that the killing was either 'willful, deliberate, and premeditated' [Mich. Comp. Laws] § 750.316(1)(a), or committed in the course of an enumerated felony, such as larceny, [Mich. Comp. Laws] § 750.316(1)(b)." *People v. Bowman*, 254 Mich. App. 142, 151, 656 N.W.2d 835, 841 (2002). Premeditation may be established through evidence of: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich.App. 158, 170, 486 N.W.2d 312, 318 (1992) (citations omitted). The elements of assault with intent to rob consist of an assault, an attempt to rob, and being armed. *People v. Patskan*, 387 Mich. 701, 714, 199 N.W.2d 458, 463 (1972).

1.

Petitioner contends that, because the case against him was based on the prosecutions' star

witness, Hampton, who was an accomplice and admitted liar, who was drunk during the incident, and who testified for the State in exchange for a reduced charge, his verdict was against the great weight of the evidence and habeas relief should be granted.

In support of his position, Petitioner cites from co-defendant Adams's trial and the trial judge's findings of fact. That same judge denied his motion for relief from judgment.

At Adams's trial, the judge found Hampton's testimony incredible and concluded that she gave several different versions in which she lied many times. The trial judge found that the prosecution was unable to meet its burden of proof. It is Petitioner's position that, notwithstanding that Adams testified at his trial and he did not, the State's case, which was insufficient to sustain a verdict in Adams's case, was identical in all other respects. Given that the State's case was insufficient in Adams's case and there being no basis to distinguish the State's case against them, he was entitled to have his conviction set aside as being insufficient and against the great weight of evidence.

The Court of Appeals–the last court to issue a reasoned decision regarding this issue– addressed the issue as follows:

> There are several very narrow exceptions where the trial court is permitted to make judgment on the credibility of a witness. These exceptions include:
>
> > when the testimony contradicts indisputable physical facts or laws, where the testimony is patently incredible or defies physical realities, where a witness's testimony is material and so inherently implausible that a reasonable juror could not believe it, or where the witness' testimony has been so seriously impeached and the case marked by uncertainties and discrepancies.
>
> If one of the tests apply, the court must then determine whether there is "a real concern that an innocent person may have been convicted," or that "it would be a manifest injustice" to not reverse the guilty verdict.
> Here, accomplice Hampton was the only witness to place defendant at the

scene of the shooting.  Hampton admitted to making several different statements after the incident occurred.  Her first statements, given under a false name, indicated that she did not know the men who entered the house.  Hampton stated that she did not tell the police that she knew who the men were because that would also implicate her in the crime.  Hampton later gave police her actual name and told them that she, along with co-defendant Anthony Adams and defendant, was involved in the murder.  Hampton stated that she had told defendant and Adams not to use a gun in the robbery, and that she was surprised when defendant came into the house holding a gun.  When she protested about the gun, defendant told her repeatedly to "shut up."

Defendant claims that Hampton's testimony was not credible because she was repeatedly impeached.  However, there was other evidence that bolstered Hampton's version of events.  Decedent's son, who was in the basement of the home at the time of the robbery, heard a male voice say "shut up" a number of times.  And, although he denied it at trial, there was evidence that Hunter told the police that defendant carried a gun, and that defendant and Adams were "always talking about a lick."

No exception applies in this case that would allow the court to consider the credibility of the witnesses.  Where, as here, there is conflicting evidence, the question of credibility should be left for the factfinder.  The jury chose to believe Hampton's testimony that defendant was the perpetrator.  We do not find Hampton's testimony so inherently implausible, or so seriously impeached and marked by uncertainty and discrepancies, that reasonable jurors could not believe it.  The court did not abuse its discretion in finding that the verdict was not against the great weight of the evidence.

*Cherry*, 2004 WL 1057747, at *1-2 (citations omitted).

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial.  Given the evidence presented, the state court's determination regarding this issue was reasonable.  Hampton's credibility was determined by the jury in this matter.  It is well-settled that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  It is the job of the fact-finder, not a federal habeas court, to resolve credibility conflicts. *See Tucker*, 541 F.3d at 661; *see also Walker v. Engle*, 703

F.2d 959, 969-70 (6th Cir. 1983) (same).

The Court of Appeals's determination regarding this issue is neither contrary to Supreme Court precedent nor an unreasonable application of the law to the facts and habeas relief is not warranted.

C.

In his second habeas claim, Petitioner alleges that he was denied the effective assistance of trial counsel because counsel failed to investigate and present two alibi witnesses, failed to object to the jury instructions, and failed to object to the prosecutor's improper questioning and closing remarks.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, Petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (same). "[D]efendant

-13-

must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

1.

Petitioner alleges that he informed his trial attorney that, at the time the crimes were committed, he was at home with Ruth Love, his mother, and Beverly Woods, her friend. Although the attorney spoke with Ms. Love, he never questioned Ms. Woods. It is Petitioner's position that his counsel abandoned a substantial defense, supported by credible witnesses, without conducting a reasonable investigation into the witnesses.

The Court of Appeals described the situation as follows.

> Defendant now argues that trial counsel was ineffective because defendant had two witnesses who would testify on his behalf to defendant's whereabouts at the time of the crime, but that counsel failed to raise an alibi defense. During the motion hearing on this matter, the prosecutor reminded the trial court that defense counsel indicated during trial that he and defendant had decided, after consultation with defendant's family, not to present any further evidence. As the trial court subsequently noted in denying defendant's motion for a *Ginther* hearing, "[t]his defendant was a grown man. The decision of the defendant was an intelligent, thought out, reflected upon decision which the defendant even had the benefit [of] discussing with his family members." Defendant has not overcome the presumption that counsel's actions were reasonable or that any alleged defects detrimentally affected the result of the trial. The trial court did not abuse its discretion by denying defendant's motion for an evidentiary hearing.

*Cherry*, 2004 WL 1057747, at *2 (citations omitted).

-14-

Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). However, defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258 (citations omitted). "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *See Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

The Court of Appeals denied relief on this claim, finding that Petitioner had failed to establish a factual basis for his challenge to counsel's out-of-court investigation of the alibi witnesses. The Court of Appeals noted that defense counsel indicated that, after consulting with Petitioner and his family, the defense would rest without producing any evidence. Petitioner was asked if he wished to testify; he indicated he did not. Petitioner never stated, at that time, that he wished to present any witnesses.

Accordingly, the Court of Appeals's conclusion regarding this issue is sound and is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. There is no evidence that trial counsel failed to conduct a reasonable investigation. Petitioner is not entitled to habeas relief on this claim.

-15-

D.

The Court finds that Petitioner's remaining claims–ineffective assistance of counsel for failing to object to the jury instructions and to the prosecutor's misconduct, trial court error for failing to instruct the jury on the underlying felony in the felony-murder charge, and prosecutorial misconduct–are barred by the procedural-default rule because he failed to present those claims to the state appellate courts in his direct appeals. Rather, Petitioner presented those claims for the first time when he filed his motion for relief from judgment with the state trial court. However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.")). Here, the interests of judicial economy are best served by addressing the merits of Petitioner's procedurally-defaulted claims.

1.

Petitioner argues that the prosecutor committed misconduct by vouching for the credibility of a witness and arguing facts not in evidence. Because Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims are intertwined, the Court will address them together.

To prevail on a claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor's conduct infringed on a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On

-16-

habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007), and "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979). When determining flagrancy, courts must consider "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were

deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

"A prosecutor cannot improperly vouch for the credibility of his witnesses." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). The Supreme Court has explained the "two dangers" posed by vouching:

> [S]uch comments can convey the impression that evidence not presented to the jury but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*United States v. Young*, 470 U.S. 1, 18-19 (1985).

Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992). Generally, improper vouching involves either blunt comments, *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or

-17-

of the credibility and truthfulness of witnesses and their testimony.  *Carroll*, 26 F.3d at 1388.

The prosecutor's statements during closing argument–that Hampton was telling the truth because the State had investigated the statements and thus supporting Hampton's version of the events–were not improper.  It is clear that the prosecutor was responding to defense counsel's closing argument and not vouching for the witness.  In his closing argument, defense counsel was challenging the credibility of Hampton and her statements to the police.

> Admittedly, this is an all CSI but the bottom line is you got a three[-]and[-] a[-]half[-]year[-]old veteran realizing if somebody said people came in and bust through the door the first think (sic) they'd do is say look at that door frame.
> And in this case that door frame is perfectly in tact (sic).  So Ms. Hampton is already being used.  It's not going to take a genius to figure that out.
> Okay.
> The first questioning did you set up O.D. White to be robbed?  Three hours later the police has (sic) already got this one figured out.
> Somewhere there was a set up (sic) and she participated.  Her story about being completely innocent and natural doesn't wash.  It doesn't
> She knows it's going south, that statement is going south.  She's got to get a better one.
> Okay.

Trial Tr. vol. IV, 37 Oct. 21, 2002.

The prosecutor returned on rebuttal and asked the hypothetical question as to what was the incentive for Hampton to lie.  The prosecutor suggested that the incentive was instead for Hampton to tell the truth.  Just as defense counsel was permitted to argue that the police investigated Hampton's statements and initially did not believe her story, the prosecutor was able to argue in response that Hampton had an incentive to tell the truth when the police began unraveling her initial story.

The prosecutor did not improperly vouch for the credibility of the State's witness.  When viewed in context, the prosecutor's comments were based on record evidence and not on his

-18-

personal belief concerning the evidence.  The prosecutor did not assert or imply that he had any special knowledge apart from the evidence to believe that Petitioner was guilty or the prosecution witness was testifying truthfully.

In addition, the trial court instructed the jury before opening statements and after closing arguments that the lawyers' statements and arguments were not evidence.  The trial court also gave a standard instruction on the factors that the jury should use to evaluate the credibility of the witnesses. Those instructions served to enforce the jury's duty to exercise its own judgment in determining witness credibility.  The prosecutor's comments about the witness did not deprive Petitioner of a fair trial.  *See Byrd v. Collins*, 209 F.3d 486, 537-38 (6th Cir. 2000).

Considering those jury instructions, trial counsel's failure to make a meritless objection on the vouching issue was not outside the range of reasonable professional assistance, and Petitioner cannot satisfy the first prong (the performance prong) of *Strickland*.  Nor can he satisfy *Strickland's* second prong, the prejudice prong: "An attorney's failure to make an . . . objection will not alter the outcome of a proceeding if the objection is meritless, and hence would not be sustained." *Lockhart v. Fretwell*, 506 U.S. 364, 380 n.6 (1993) (Stevens, J., dissenting on other grounds, joined by Blackmun, J.); *see, e.g.*, *Burton v. Renico*, 391 F.3d 764, 780 (6th Cir. 2004) ("[A] constitutional claim based on the absence of an instruction regarding mitigation or justification in this case lacks merit, so it cannot be said that failure to raise such an objection on appeal constituted ineffective assistance of appellate counsel . . . .").  In other words, counsel cannot be deemed ineffective for failure to raise a meritless objection. *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998).

Accordingly, Petitioner's claims in this instance provide no basis for habeas relief under the AEDPA.

2.

Petitioner also argues that he was denied his constitutional right to due process and a fair trial when the trial court failed to instruct on the underlying felony of robbery in the felony-murder charge. Again, because this claim is intertwined with Petitioner's ineffective-assistance-of-counsel claim, and they will be addressed together.

In order for habeas relief to be granted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F.Supp. 769, 784 (E.D. Mich. 1996). State law instructional errors rarely form the basis for habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

Here, when read in their entirety, the jury instructions do address the crime of robbery. While giving an instruction for assault with intent to rob while armed, the trial court also gave an instruction for robbery. The trial court instructing as to felony murder, stated:

> Now, the defendant is charged with first[-]degree felony murder in count one.
>     To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant caused the death of O.D. White.
>     That is Mr. White dies as a result of a single gun shot - - of a single shot gun wound to the right chest. Second, that the defendant had one of these three states of mind, he intended to kill or he intended to do great bodily harm to this deceased or he knowingly created a very high risk of death or great bodily harm knowing that

death or such harm would be the likely result of his action.

Third, that when he did the act that caused the death the defendant was committing or helping someone else to commit the crime of robbery or home invasion which will be defined for you.

Forth (sic), that the killing was not justified, excused or done under circumstances that reduces it to the lessor crime of murder in the second degree.

The defendant must have either committed or must have helped someone else commit the felony. To help means to perform acts or get encouragement before or during the commission of the crime that aides or assist[s] in its commission.

At the time of giving aide or encouragement the defendant must have intended the commission of a felony. In this case the felonies would be robbery or home invasion.

Now the Court will defense home invasion for you. And the Court will define the assault with intent to commit armed robbery which is the actual felony that is charged in this case.

* * *

And third, that at the time of the assault the defendant intended to commit robbery. Robbery occurs when a person assaults someone else and takes money or property from the person or in the persons presence intending to take it from the person permanently.

Trial Tr. vol. IV, 57-60 Oct. 21, 2002.

The trial court instruction properly explained the crime of robbery given to the jury in the course of the instructions. Petitioner is not entitled to habeas relief on his jury-instruction claim. And, because the instructions were properly given, counsel was not ineffective for failing to object. Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim regarding this issue.

E.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing

threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's

assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473,

484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.

Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a

full merits review, but must limit its examination to a threshold inquiry into the underlying merit of

the petitioner's claims. *Id.* at 336-37.

Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, a certificate of appealability is not warranted in this case.

III.

Accordingly, it is **ORDERED** that Petitioner Cherry's petition for writ of habeas corpus is

**DENIED**.

It is further **ORDERED** that the Court **DECLINES** to issue Petitioner Cherry a certificate

of appealability.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 18, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on August 18, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

---